IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TENNESSEE
EASTERN DIVISION

_____

RENEE L. ANDERSON,          )
                            )
    Plaintiff,          )
                            )
v.                          )          No. 1:18-cv-2668-TMP
                            )
ANDREW SAUL,                )
COMMISSIONER OF SOCIAL      )
SECURITY,                   )
                            )
    Defendant.          )

_____

### ORDER AFFIRMING THE COMMISSIONER'S DECISION
_____

On September 28, 2018, Renee L. Anderson filed a Complaint seeking judicial review of a social security decision.[1] (ECF No. 1.) Anderson seeks to appeal from a final decision of the Commissioner of Social Security ("Commissioner") determining that she did not qualify for Social Security Disability Insurance benefits. For the following reasons, the decision of the Commissioner is AFFIRMED.

## I.  FINDINGS OF FACT

On December 16, 2015, Anderson submitted an application for Social Security Disability Insurance ("SSDI") benefits and

_____

[1]After the parties consented to the jurisdiction of a United States magistrate judge on December 11, 2019, this case was referred to the undersigned to conduct all proceedings and order the entry of a final judgment in accordance with 28 U.S.C. § 636(c) and Fed. R.

Supplemental Security Income ("SSI") payments under Title II of the Social Security Act, 42 U.S.C. §§ 404-434. (R. at 34, 206.) The application, which alleged an onset date of August 15, 2008, was denied initially and on reconsideration. (R. at 120, 134.) Anderson then requested a hearing, which was held before an Administrative Law Judge ("ALJ") on October 31, 2017. (R. at 77.) At the hearing, Anderson amended the alleged onset date to December 16, 2015. (R. at 34, 83.)

After considering the record and the testimony given at the hearing, the ALJ used the five-step analysis to conclude that Anderson was not disabled from December 16, 2015 through the date of his decision. (R. at 31-44.) At the first step, the ALJ found that Anderson had not "engaged in substantial gainful activity since December 16, 2015, the amended alleged onset date." (R. at 36.) At the second step, the ALJ concluded that Anderson suffers from the following severe impairments: major joint dysfunction, gout, and carpal tunnel syndrome ("CTS"). (R. at 36.) At the third step, the ALJ concluded that Anderson's impairments do not meet or medically equal, either alone or in the aggregate, the severity of one of the impairments listed in 20 C.F.R. Part 404, Subpart P, Appendix 1. (R. at 37.) Accordingly, the ALJ had to then determine

Civ. P. 73. (ECF No. 11.)

whether Anderson retained the residual functional capacity ("RFC")
to perform past relevant work or could adjust to other work. The
ALJ found that:

> [Anderson] has the residual functional capacity to
> perform light work as defined in 20 CFR 404.1567(b),
> except [Anderson] is able to climb
> ladders/ropes/scaffolds, kneel, crouch, or crawl no more
> than occasionally. . . . [Anderson] is frequently able to
> handle, finger, do fine manipulation, climb ramps/stairs,
> balance, or stoop.

(R. at 37.) The ALJ then found at step four that Anderson "is
capable of performing past relevant work as a mental health
facility coordinator . . . (light exertional level)." (R. at 39.)
Additionally, the ALJ determined that "[t]his work does not require
the performance of work-related activities precluded by
[Anderson's] residual functional capacity (20 CFR 404.1565)." (R.
at 39.) Accordingly, the ALJ determined that Anderson had not been
under a disability, as defined by the Social Security Act, from
December 16, 2015, through the date of his decision. (R. at 39.)

On April 11, 2018, the ALJ issued a decision detailing the
findings summarized above. (R. at 31-44.) On August 10, 2018, the
SSA Appeals Council denied Anderson's request for review of the
hearing decision. (R. at 1-7.) Anderson now seeks judicial review
of the ALJ's decision, which stands as the final decision of the
Commissioner under § 1631(c)(3) of the Act. Anderson argues that

the ALJ erroneously found that Anderson lacked an impairment or combination of impairments meeting or medically equaling the severity of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525, and 404.1526. (ECF No. 12 at 8.) Anderson also asserts that the ALJ erroneously found that Anderson has the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b). (Id.) Lastly, Anderson contends that the ALJ erroneously determined that Anderson is capable of performing past relevant work as a mental health facility coordinator. (Id.)

## II. CONCLUSIONS OF LAW

### A. Standard of Review

Under 42 U.S.C. § 405(g), a claimant may obtain judicial review of any final decision made by the Commissioner after a hearing to which he or she was a party. "The court shall have power to enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the Commissioner of Social Security, with or without remanding the cause for a rehearing." 42 U.S.C. § 405(g). Judicial review of the Commissioner's decision is limited to whether there is substantial evidence to support the decision and whether the Commissioner used the proper legal criteria in making the decision. Id.; Cardew v.

Comm'r of Soc. Sec., 896 F.3d 742, 745 (6th Cir. 2018); Cole v. Astrue, 661 F.3d 931, 937 (6th Cir. 2011); Rogers v. Comm'r of Soc. Sec., 486 F.3d 234, 241 (6th Cir. 2007). Substantial evidence is more than a scintilla of evidence but less than a preponderance, and is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Kirk v. Sec'y of Health & Human Servs., 667 F.2d 524, 535 (6th Cir. 1981) (quoting Richardson v. Perales, 402 U.S. 389, 401 (1971)).

In determining whether substantial evidence exists, the reviewing court must examine the evidence in the record as a whole and "must 'take into account whatever in the record fairly detracts from its weight.'" Abbott v. Sullivan, 905 F.2d 918, 923 (6th Cir. 1990) (quoting Garner v. Heckler, 745 F.2d 383, 388 (6th Cir. 1984)). If substantial evidence is found to support the Commissioner's decision, however, the court must affirm that decision and "may not even inquire whether the record could support a decision the other way." Barker v. Shalala, 40 F.3d 789, 794 (6th Cir. 1994) (quoting Smith v. Sec'y of Health & Human Servs., 893 F.2d 106, 108 (6th Cir. 1989)). Similarly, the court may not try the case de novo, resolve conflicts in the evidence, or decide questions of credibility. Ulman v. Comm'r of Soc. Sec., 693 F.3d 709, 713 (6th Cir. 2012) (citing Bass v. McMahon, 499 F.3d 506, 509

(6th Cir. 2007)).  Rather, the Commissioner, not the court, is charged with the duty to weigh the evidence, to make credibility determinations, and to resolve material conflicts in the testimony.  Walters v. Comm'r of Soc. Sec., 127 F.3d 525, 528 (6th Cir. 1997); Crum v. Sullivan, 921 F.2d 642, 644 (6th Cir. 1990).

**B.    The Five-Step Analysis**

The Act defines disability as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months."  42 U.S.C. § 423(d)(1).  Additionally, section 423(d)(2) of the Act states that:

> An individual shall be determined to be under a disability only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he lives, or whether a specific job vacancy exists for him, or whether he would be hired if he applied for work.  For purposes of the preceding sentence (with respect to any individual), "work which exists in the national economy" means work which exists in significant numbers either in the region where such individual lives or in several regions of the country.

Under the Act, the claimant bears the ultimate burden of establishing an entitlement to benefits.  Oliver v. Comm'r of Soc.

Sec., 415 F. App'x 681, 682 (6th Cir. 2011). The initial burden is on the claimant to prove she has a disability as defined by the Act. Siebert v. Comm'r of Soc. Sec., 105 F. App'x 744, 746 (6th Cir. 2004) (citing Walters, 127 F.3d at 529); see also Born v. Sec'y of Health & Human Servs., 923 F.2d 1168, 1173 (6th Cir. 1990). If the claimant is able to do so, the burden then shifts to the Commissioner to demonstrate the existence of available employment compatible with the claimant's disability and background. Born, 923 F.2d at 1173; see also Griffith v. Comm'r of Soc. Sec., 582 F. App'x 555, 559 (6th Cir. 2014).

Entitlement to social security benefits is determined by a five-step sequential analysis set forth in the Social Security Regulations. See 20 C.F.R. §§ 404.1520 & 416.920. First, the claimant must not be engaged in substantial gainful activity. See 20 C.F.R. §§ 404.1520(b) & 416.920(b). Second, a finding must be made that the claimant suffers from a severe impairment. 20 C.F.R. §§ 404.1520(a)(4)(ii) & 416.920(a)(5)(ii). In the third step, the ALJ determines whether the impairment meets or equals the severity criteria set forth in the Listing of Impairments contained in the Social Security Regulations. See 20 C.F.R. §§ 404.1520(d), 404.1525, 404.1526. If the impairment satisfies the criteria for a listed impairment, the claimant is considered to be disabled. On

the other hand, if the claimant's impairment does not meet or equal a listed impairment, the ALJ must undertake the fourth step in the analysis and determine whether the claimant has the RFC to return to any past relevant work. See 20 C.F.R. §§ 404.1520(a)(4)(iv) & 404.1520(e). If the ALJ determines that the claimant can return to past relevant work, then a finding of not disabled must be entered. Id. But if the ALJ finds the claimant unable to perform past relevant work, then at the fifth step the ALJ must determine whether the claimant can perform other work existing in significant numbers in the national economy. See 20 C.F.R. §§ 404.1520(a)(4)(v), 404.1520(g)(1), 416.960(c)(1)-(2). Further review is not necessary if it is determined that an individual is not disabled at any point in this sequential analysis. 20 C.F.R. § 404.1520(a)(4).

C.   **Whether Substantial Evidence Supported the ALJ's Decision**

On appeal, Anderson challenges the ALJ's determinations at the third and fourth steps of the sequential analysis. Upon review of the record, this court finds there is substantial evidence to support the ALJ's determinations.

1.   Step Three Finding

The ALJ correctly found that Anderson does not have an impairment or combination of impairments that meets or medically

equals the severity of a listed impairment. See 20 C.F.R. pt. 404, subpt. P, app. 1. The ALJ determined that Anderson had the following severe impairments: major joint dysfunction, gout, and carpal tunnel syndrome ("CTS"). (R. at 36.) However, the ALJ determined that these impairments, neither individually nor in the aggregate, met or medically equaled the severity of a listed impairment. (R. at 37.) Specifically, the ALJ determined that "[t]he record does not show that the claimant has major dysfunction of any joint resulting in an inability to ambulate effectively or an inability to perform fine and gross movements effectively, as required by Medical Listing 1.02." (R. at 37.) Section 1.02 of the medical listing provides as follows:

> Section 1.02 Major dysfunction of a joint(s) (due to any cause) is characterized by gross anatomical deformity (e.g., subluxation, contracture, bony or fibrous ankylosis, instability) and chronic joint pain and stiffness with signs of limitation of motion or other abnormal motion of the affected joint(s), and findings on appropriate medically acceptable imaging of joint space narrowing, bony destruction, or ankylosis of the affected joint(s). With:
> A. Involvement of one major peripheral weight-bearing joint (i.e., hip, knee, or ankle), resulting in inability to ambulate effectively, as defined in 1.00B2b; OR
> B. Involvement of one major peripheral joint in each upper extremity (i.e., shoulder, elbow, or wrist-hand), resulting in inability to perform fine and gross movements effectively, as defined in 1.00B2c.

20 C.F.R. Pt. 404, subpt. P, app. 1. Essentially, the ALJ determined that Anderson's impairments did not satisfy 1.02A or 1.02B, and Anderson now asserts that her impairments satisfy both. The ALJ's determinations in both regards are supported by substantial evidence.

a. Ambulating effectively

The first question is whether substantial evidence supports the ALJ's determination that Anderson did not have "major dysfunction of any joint resulting in an inability to ambulate effectively[.]" (R. at 37.) Anderson asserts that the major joint dysfunction in her knee satisfies 1.02A, which requires "[i]nvolvement of one major peripheral weight-bearing joint (i.e., hip, knee, or ankle), resulting in inability to ambulate effectively, as defined in 1.00B2b[.]"

An "inability to ambulate effectively" is defined in Section 1.00B2b as "an extreme limitation of the ability to walk; i.e., an impairment(s) that interferes very seriously with the individual's ability to independently initiate, sustain, or complete activities." Ineffective ambulation occurs when an individual's lower extremity functioning is insufficient "to permit independent ambulation without the use of a hand-held assistive device(s) that limits the functioning of both upper extremities." Id. Effective

ambulation occurs when an individual is "capable of sustaining a reasonable walking pace over a sufficient distance to be able to carry out activities of daily living." Id. Effective ambulation also requires "the ability to travel without companion assistance to and from a place of employment or school." Id. "[E]xamples of ineffective ambulation include, but are not limited to, the inability to walk without the use of a walker, two crutches or two canes, the inability to walk a block at a reasonable pace on rough or uneven surfaces, the inability to use standard public transportation, the inability to carry out routine ambulatory activities, such as shopping and banking, and the inability to climb a few steps at a reasonable pace with the use of a single hand rail." Id. "The ability to walk independently about one's home without the use of assistive devices does not, in and of itself, constitute effective ambulation." Id.

According to Anderson, "[t]he ALJ relied heavily on only selective medical reports by Dr. Sickle, which included notes regarding [the] relief she experienced upon injections in her knee." (ECF No. 12, at 10.) Anderson contends that the ALJ disregarded Anderson's knee injections when determining that she did not have any limb pain, limited joint movement, or walking difficulty in March of 2017. (Id.) Additionally, Anderson states

that "the ALJ failed to note Dr. Sickle's numerous reports that Mrs. Anderson presented with a small effusion in her left knee, mild crepitance with range of motion testing, and pain so severe that Mrs. Anderson reported it limited her ability to walk/stand." (Id.) Anderson also notes that, in accordance with Section 1.02's requirement that claimants show joint space narrowing with appropriate medically acceptable imaging, her knee x-rays demonstrated "[n]arrowing of all 3 joint compartments with moderate size marginal osteophytes." (Id. at 10-11.)

The government argues that Anderson has failed to establish the required elements of the listing for major joint dysfunction. (ECF No. 15, at 6.) According to the government, "the record shows that she was able to ambulate and maintained gross and fine movement, evidence of which defeats her argument." (Id.) The government notes that, in order to succeed on her listing argument, Anderson must establish evidence satisfying all of the listing criteria. See 20 C.F.R. § 416.925(d) ("To meet the requirements of a listing, you must have a medically determinable impairment that satisfies all the criteria of a listing."); see also Sullivan v. Zebley, 493 U.S. 521, 531 (1990) ("An impairment that manifests only some of those criteria, no matter how severely, does not qualify.").

Anderson argues that a small effusion in her left knee, mild crepitus with range of motion testing, and "pain so severe it limited her ability to walk/stand" establish that she met listing 1.02. (ECF No. 12, at 10.) According to the government, Anderson's small effusion and mild crepitus "do not suggest an inability to ambulate." (ECF No. 15, at 9.) The government also notes that during the same evaluation that rendered those findings, Anderson's range of motion was grossly intact. (R. at 397.) The government notes that Anderson routinely presented with normal gait and station despite her knee pain. (R. at 335, 407, 412, 432, 455, 627.) Although Anderson used a boot at times to address a bone spur, she did not require a cane, wheelchair, or walker. (R. at 91-92, 300.) Anderson did not have difficulty walking. (R. at 388, 405, 414.) One of Anderson's treating physicians, Dr. Banks, advised Anderson to walk for about 30 minutes for at least three to four times per week. (R. at 357, 410.) Based on the foregoing, there was substantial evidence to support the ALJ's determination that Anderson did not have an inability to ambulate effectively.

b.    Performing fine and gross movements effectively

The next question is whether substantial evidence supports the ALJ's determination that Anderson did not have "major dysfunction of any joint resulting in an . . . inability to perform fine and

gross movements effectively[.]" (R. at 37.) Anderson asserts that her carpal tunnel syndrome ("CTS") satisfies 1.02B, which requires "[i]nvolvement of one major peripheral joint in each upper extremity (i.e., shoulder, elbow, or wrist-hand), resulting in inability to perform fine and gross movements effectively, as defined in 1.00B2c."

An "inability to perform fine and gross movements effectively" is defined in Section 1.00B2c is "an extreme loss of function of both upper extremities; i.e., an impairment(s) that interferes very seriously with the individual's ability to independently initiate, sustain, or complete activities." Using one's upper extremities effectively requires that the individual "be capable of sustaining such functions as reaching, pushing, pulling, grasping, and fingering to be able to carry out activities of daily living." Id. "[E]xamples of inability to perform fine and gross movements effectively include, but are not limited to, the inability to prepare a simple meal and feed oneself, the inability to take care of personal hygiene, the inability to sort and handle papers or files, and the inability to place files in a file cabinet at or above waist level." Id.

Anderson asserts that the ALJ improperly failed to consider her CTS despite deeming it a severe impairment. (ECF No. 12, at

-14-

11.) Anderson contends that the ALJ's cursory discussion of her CTS was inconsistent with its treatment by one of her treating physicians, Dr. Torstrick, who "consistently referred Mrs. Anderson to a hand therapist and offered a possible injection for her persisting pain even months following her carpal tunnel surgery." (Id.)

The government argues that the record demonstrates that Anderson "maintained gross and fine movement," despite her CTS. (ECF No. 15, at 6.) While Anderson reported numbness in her fingers, the government contends that "numbness does not equate to loss of fine and gross movement." (Id. at 9.) The government noted that Anderson, who is right-handed, "filled in several forms by hand in connection with her application for benefits, including her Function Report, which indicates that she had greater use of her right hand than she alleges." (Id. at 9-10; R. at 88, 301.) "The Function Report also shows that Plaintiff regularly engaged in multiple activities that required fine and gross movements such as brushing teeth, eating cereal or fruit (although perhaps eating slower), and driving a car, which can require actions like grasping keys, pushing buttons, and using the steering wheel and gear shift." (Id. at 10; R. at 294, 297.) Medical findings also demonstrated that Anderson had intact motor, sensory, and vascular

function in the hand and wrist. (R. at 397.) In addition, she had grip strength in both hands ranging from 25 to 40 pounds, even with her hands in an unusual position. (R. at 391, 401.) This evidence supports the ALJ's determination that Anderson was able to perform gross and fine movements effectively.

As the government points out, the fact that Dr. Torstick recommended hand therapy to Anderson for her grip strength does not establish a reduction in her ability to perform fine and gross movements at a level sufficient to satisfy the listing. Additionally, Anderson declined these referrals. (R. at 350, 391.) Refusing treatment, or pursuing only conservative treatments, "suggests the absence of a disabling condition." Branon v. Comm'r of Soc. Sec., 539 F. App'x 675, 678 (6th Cir. 2013). In this case, Anderson has cited lack of insurance as the basis for declining Dr. Torstick's referral, but there is no evidence that Anderson was denied treatment for such services due to financial reasons. (R. at 391.) This suggests that Anderson's characterizations of her CTS are not entirely consistent with what the record contains. See Moore v. Comm'r of Soc. Sec., No. 14-1123-T, 2015 WL 1931425, at *3 (W.D. Tenn. Apr. 28, 2015) (citing Goff v. Barnhart, 421 F.3d 785, 793 (8th Cir. 2005) ("However, there is no evidence Goff was ever denied medical treatment due to financial reasons.")). Moreover,

Anderson also declined a range of other conservative treatment options suggested by Dr. Torstrick, including seeking a second opinion, injections, and regular follow up. (R. at 622.) Her refusal to engage in alternatives or additional care further undermines her claim that her carpal tunnel syndrome was as limiting as she claims. Based on the foregoing, there was substantial evidence to support the ALJ's determination that Anderson did not have an inability to perform fine and gross movements effectively. Accordingly, there was substantial evidence to support the ALJ's third step determination.

In addition to advancing the arguments addressed above, Anderson summarily asserts that she "has an impairment or combinations of impairments that meet or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 C.F.R. 404.1520(d), 404.1525, and 404.1526) due to her major disfunction of her joints, especially her knee, shoulder, and back pain, her gout, and her severe carpal tunnel syndrome." (ECF No. 12, at 11.) Because Anderson "does not elaborate or provide any further development of the argument" regarding her shoulder, back pain, or gout, she waives any such argument on the issue. See Moore v. Comm'r of Soc. Sec., 573 F. App'x 540, 543 (6th Cir. 2014); see also United States v. Stewart,

628 F.3d 246, 256 (6th Cir. 2010) ("Issues adverted to in a perfunctory manner, unaccompanied by some effort at developed argumentation, are deemed waived. It is not sufficient for a party to mention a possible argument in the most skeletal way, leaving the court to . . . put flesh on its bones.") (quoting McPherson v. Kelsey, 125 F.3d 989, 995-96 (6th Cir. 1997)).

2.  Residual Functional Capacity Finding

After finding that Anderson's impairment, or combination of impairments, does not meet or medically equal the severity of a listed impairment, the ALJ assessed and made a finding about Anderson's residual functional capacity ("RFC"):

> [Anderson] has the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b), except [Anderson] is able to climb ladders/ropes/scaffolds, kneel, crouch, or crawl no more than occasionally. . . . [Anderson] is frequently able to handle, finger, do fine manipulation, climb ramps/stairs, balance, or stoop.

(R. at 37.) This assessment occurs after step three and before step four of the sequential analysis. 20 C.F.R. § 404.1520(e). The RFC determination is "based on all the relevant medical and other evidence in [the claimant's] case record." Id. A claimant's RFC is "the most [she] can still do despite [her] limitations." 20 C.F.R. § 404.1545(a). The RFC includes only those limitations that the ALJ finds consistent with the record as a whole. Poe v. Comm'r of Soc.

Sec., 342 F. App'x 149, 155-56 (6th Cir. 2009).

Anderson argues that the ALJ erroneously found that she had the RFC to perform light work. (ECF No. 12, at 11.) "Light work" is defined in 20 C.F.R. § 404.1567(b) as follows:

> Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls. To be considered capable of performing a full or wide range of light work, [a claimant] must have the ability to do substantially all of these activities.

According to Anderson, her testimony and medical history demonstrate that she is "unable to walk, stand, or sit for the requisite period of time" and therefore cannot do light work. (ECF No. 12, at 12.) Anderson asserts that "[n]o reasonable employer would retain an employee who must sit so often or who experiences such pain while standing and walking, and who must so frequently alternate between sitting, standing and lying down." (Id.) Anderson's testimony from her hearing before the ALJ "indicates that she is only able to sit or stand for about 15-20 minutes at a time, and she spends about four (4) hours total laying down in her bed each day in an effort to control her pain." (Id. at 13.) Thus, Anderson asserts that "considering the various, well-established medical conditions from which Mrs. Anderson suffers, including her

well-documented weakened grip strength, her gout and bone spur, and her painful knee and shoulder, her RFC falls far below what is required to perform any light or sedentary work." (Id.)

In reviewing the ALJ's RFC assessment, however, the only question for the court is "whether there was substantial evidence to support the ALJ's decision." Mokbel-Aljahmi v. Comm'r of Soc. Sec., 732 F. App'x 395, 400 (6th Cir. 2018); see also Blakley v. Comm'r of Soc. Sec., 581 F.3d 399, 406 (6th Cir. 2009) ("The substantial-evidence standard . . . presupposes that there is a zone of choice within which the decisionmakers can go either way, without interference by the courts.") (quoting Mullen v. Bowen, 800 F.2d 535, 545 (6th Cir. 1986)). The court's inquiry into this issue does not include whether "there was evidence in favor of [the claimant's] position." Mokbel-Aljahmi, 732 F. App'x at 400. Rather, if the ALJ's decision is supported by substantial evidence, the court must "defer to that decision even in the face of substantial evidence supporting the opposite conclusion." Id. (citing Blakley, 581 F.3d at 406). In addition, while Anderson relies heavily on her testimony to argue against the ALJ's RFC assessment, it must be noted that the ALJ determined that "the claimant's statements concerning the intensity, persistence and limiting effects of [her] symptoms are not entirely consistent with the medical evidence and

other evidence in the record[.]" (R. at 38.) The ALJ determined that, unlike Anderson's testimony, "the medical evidence established the claimant was able to function even with her impairments." (Id.) The court, on appeal, cannot disturb or reconsider "a credibility determination made by the ALJ, the finder of fact." Sullenger v. Comm'r of Soc. Sec., 255 F. App'x 988, 995 (6th Cir. 2007) (citing Smith v. Halter, 307 F.3d 377, 379 (6th Cir. 2001)).

In this case, the ALJ detailed a great deal of medical evidence that served as the basis for his assessment of Anderson's RFC. (R. at 37-39.) For example, the ALJ noted that medical records of treatment with Anthony Cawthon, DPM, for right foot Achilles tendinitis in March 2014 demonstrated a decrease from severe to moderate pain, suggesting improvement in claimant's foot pain. (R. at 330.) The ALJ also referenced heel pain treatment records from Excelsior Podiatry Clinic in February of 2015 and March and June of 2016 consistently demonstrating normal muscle strength and tone, as well as normal musculoskeletal ranges of motion, with no contractures, malalignment, bony abnormalities, or palpable pain. (R. at 642, 645, 649.) The ALJ also walked through Anderson's treatment records from Jackson Clinic spanning from January 1998 to June 2017, during which time Anderson received treatment for, among

other things, carpal tunnel nerve neuroplasty/neuropathy, CTS, osteoarthritis, low back pain, and hand pain. (R. at 38-39.) These records noted that Anderson's hand pain was not arthralgia. (R. at 349, 391.) Many treatment records demonstrated that Anderson had reported feeling well overall. (R. at 440, 475, 485, 513, 527, 540, 552, 574.) According to a treatment record from January 2017, Anderson stated she received complete relief from pain for several months after undergoing injections in her left knee and right shoulder. (R. at 395.) On numerous occasions between April 2013 and March 2017, Anderson's systems were negative for joint pain/swelling/stiffness, limb pain/swelling, limited joint movement, limb weakness, paresthesia, or walking difficulty. (R. at 388, 405, 443, 453, 466, 489, 519.) In May 2017, Anderson complained of only some residual right index finger numbness, mild left index/middle finger numbness, and some headaches. (R. at 657.) Examinations during this course of treatment often showed a normal gait and station, normal extremity strength, and negative straight leg raises with no neurological deficits. (R. at 355, 407, 412, 416, 432, 445, 455, 463, 476, 486, 528, 546, 553, 628.) In addition, there is evidence that, in accordance with light work requirements, Anderson maintained grip strength of 20 to 40 pounds and had intact motor, sensory, and vascular function in the hand

and wrist. (R. at 391, 397, 401.)

The ALJ also discussed the medical opinions from the disability determination services ("DDS") physicians, James Gregory, M.D., and Michael Ryan, M.D., both of whom opined that Anderson was able to perform light work with certain postural limitations. (R. at 110, 122.) The ALJ gave these opinions great weight, finding them "consistent with the bulk of the medical evidence," and noting that the examining physicians "are experts as well as are familiar with program rules and the expected limitations of impairments." (R. at 39.) The ALJ noted that the DDS physicians "had the opportunity to review a substantial portion of the medical evidence," and explained that "evidence received after those opinions were rendered reveal the claimant to be on a stable steady course, and do not support a finding that the claimant's condition is materially worse than it was at the time the opinions were rendered." (Id.)

Both Dr. Gregory and Dr. Ryan found that Anderson could stand or walk for about six hours in an eight-hour day. (R. at 115, 129.) The ALJ noted their review of the record and expertise with agency programs in giving their opinions great weight. (R. at 39.) As the government points out, consideration of such factors is proper considerations when weighing the opinions of non-treating

physicians. See 20 C.F.R. §§ 404.1527(c)(3)-(6) (agency considers factors of supportability and consistency with the record, specialization, and familiarity with agency programs are factors in weighing medical opinions). The ALJ did not adopt the medical opinions in question, and he was not required to do so. See Reeves v. Comm'r of Soc. Sec., 618 F. App'x 267, 275 (6th Cir. 2015) ("Even where an ALJ provides 'great weight' to an opinion, there is no requirement that an ALJ adopt a state agency psychologist's opinions verbatim; nor is the ALJ required to adopt the state agency psychologist's limitations wholesale"). Rather, the ALJ expressed general agreement with the conclusions reached in those opinions, namely that Anderson could perform light work, a conclusion which the ALJ found consistent with the bulk of the medical evidence available in the record. (R. at 39.) Anderson argues that the ALJ gave too much weight to the opinions of these non-treating examiners because they rendered conclusions before obtaining the records from Anderson's treatment with Dr. Torstrick. (ECF No. 12, at 13-14.) However, as noted above, the ALJ acknowledged that the non-treating physicians did not review the entire medical record but only a substantial portion of it. (R. at 39.) Moreover, the ALJ determined that the medical records received after the DDS physicians offered their opinions did not demonstrate

a change in circumstances sufficient to alter their conclusions. (Id.) The ALJ did not err in relying on the opinions of Dr. Gregory and Dr. Ryan. Based on a review of the medical and other evidence in the record, there was substantial evidence to support the ALJ's assessment of Anderson's RFC.

      3.   Step Four Finding

After assessing Anderson's RFC, the ALJ moved to step four of the sequential analysis, which required the ALJ to determine whether, based on her RFC, Anderson could still do her past relevant work. 20 C.F.R. § 404.1520. At the fourth step, the ALJ compares a claimant's RFC "with the physical and mental demands of [the claimant's] past relevant work." § 404.1520(f). "If [a claimant] can still do this kind of work, [the SSA] will find that [the claimant is] not disabled." Id. In finding that Anderson could return to her previous work as a mental health facility coordinator, the ALJ stated that "[i]n comparing the claimant's residual functional capacity with the physical and mental demands of this work, the undersigned finds that the claimant is able to perform it as actually and generally performed[.]" (R. at 39-40.)

Anderson argues that the ALJ improperly failed to consider "the grids or the Medical Vocational guidelines in determining that Mrs. Anderson can return to past work as a mental health facility

coordinator[.]" (ECF No. 12, at 14.) In addition, Anderson asserts that "the ALJ disregarded the fact that the vocational expert stated that no jobs existed for a hypothetical individual who could only occasionally use their hands for handling, fingering, and fine manipulation, and would be off task approximately 5% of the workday in addition to normal breaks, which represents Mrs. Anderson's actual limitations." (Id. at 15.) Anderson also states that her impairments "preclude her from transferring her skills to another employer as a mental health facility coordinator[.]" (Id.) In making these arguments, Anderson incorrectly conflates the fourth and fifth steps of the sequential analysis. These arguments pertain solely to the fifth step determination of whether a claimant can make an adjustment to other work. See § 404.1520(g). However, the sequential analysis proceeds to step five only if the ALJ finds that the claimant cannot do his or her past relevant work. See § 404.1560(b)(3) ("If we find that you have the residual functional capacity to do your past relevant work, we will determine that you can still do your past work and are not disabled. We will not consider your vocational factors of age, education, and work experience or whether your past relevant work exists in significant numbers in the national economy."); see also § 404.1520(a)(4) ("If we can find that you are disabled or not disabled at a step, we

make our determination or decision and we do not go on to the next step."). In this case, the ALJ did not reach, and was not required to reach, step five of the sequential analysis. The ALJ properly ended his analysis after determining at step four that Anderson could return to her past relevant work. Anderson abandoned her step five arguments in her reply brief.

The sole argument remaining in Anderson's opening brief is that "the ALJ claims Anderson can return to her past work, despite the fact that she is 58 years old and suffers from several impairments that affect her ability to work full-time, stand, sit, walk, and lift: all which are required to work as a mental health facility coordinator." (ECF No. 12, at 14-15.) Additionally, Anderson points to the medical records noting her decreased grip strength and to the testimony given by Anderson and her husband at the hearing before the ALJ that Anderson constantly drops items and cannot text or type due to her carpal tunnel syndrome. (R. at 54, 113, 124.) These arguments, however, do not attack the ALJ's determination that a claimant with the RFC assessed by the ALJ and attributed to Anderson could return to her past relevant work as a mental health facility coordinator. Rather, these arguments merely reiterate Anderson's attack on the ALJ's assessment of her RFC. At step four, the ALJ compares the claimant's RFC to "the physical and

mental demands of [the claimant's] past relevant work."
§404.1520(f). Anderson does not argue that someone with the RFC
found by the ALJ could not return to her past relevant work as a
mental health facility coordinator. Instead, she argues that her
specific medical conditions render her incapable of returning to
such work. Yet, Anderson's statements about her medical conditions
conflict with the record and the ALJ's assessment of her RFC, an
assessment which, as discussed above, is supported by substantial
evidence. Accordingly, Anderson fails to advance any meaningful
argument as to the ALJ's step four determination that someone with
Anderson's RFC could return to her past relevant work as a mental
health facility coordinator.

The government, in its response, asserts that substantial
evidence supported the ALJ's step four determination. The court
need not reach this issue, as it was not properly raised by
Anderson. See Brenay v. Schartow, 709 F. App'x 331, 337 (6th Cir.
2017) ("[I]t is not for the court to search the record and
construct arguments. Parties must do that for themselves.") (citing
Magnum Towing & Recovery v. City of Toledo, 287 F. App'x 442, 449
(6th Cir. 2008)). For completeness, however, the court will address
this issue, as well. The main point of contention is the ALJ's
reliance on testimony from a vocational expert that an individual

with Anderson's RFC could return to her past work as a mental health facility coordinator. (R. at 104.) "The regulations permit an ALJ to use the services of a vocational expert at step four to determine whether a claimant can do his past relevant work, given his RFC." Griffeth v. Comm'r of Soc. Sec., 217 F. App'x 425, 429 (6th Cir. 2007); see also 20 C.F.R. § 404.1560(b)(2). "Substantial evidence may be produced through reliance on the testimony of a vocational expert in response to a 'hypothetical' question, but only if the question accurately portrays [the claimant's] individual physical and mental impairments." Griffeth, 217 F. App'x at 429 (internal quotation marks omitted).

Anderson argues for the first time in her reply brief that the ALJ, when proposing a hypothetical question to the vocational expert, "failed to accurately describe [Anderson's] physical impairments." (ECF No. 16, at 7.) As a preliminary matter, the court reiterates that it is addressing an argument that would otherwise be waived because Anderson failed to raise it until her reply. See ECIMOS, LLC v. Nortek Global HVAC, LLC, 736 F. App'x 577, 584 (6th Cir. 2018) ("It is black-letter appellate practice that a party cannot raise arguments for the first time in a reply brief.") (citing Sanborn v. Parker, 629 F.3d 554, 579 (6th Cir. 2010); Bormuth v. Cty. of Jackson, 870 F.3d 494, 500 (6th Cir.

2017)). However, Anderson's argument here is waived for another reason, as well: Anderson's entire argument regarding the ALJ's hypothetical is comprised of two sentences, neither of which contains any citation to the record or provides any indication of how the question was deficient. (ECF No. 16, at 7.) Instead, Anderson vaguely asserts that "the ALJ failed to consider [her] medical conditions and the [e]ffect of these conditions on her ability to walk, stand, and use her hands." (Id.) Rather than citing to the record, Anderson simply states that her argument is "supported by credible medical evidence." (Id.) Anderson has not sufficiently developed this argument. See Brenay v. Schartow, 709 F. App'x 331, 337 (6th Cir. 2017) ("[I]t is not for the court to search the record and construct arguments. Parties must do that for themselves.") (citing Magnum Towing & Recovery v. City of Toledo, 287 F. App'x 442, 449 (6th Cir. 2008)); see also Nortek Global, 736 F. App'x at 584 ("[T]he argument is not developed, and it is not this court's job 'to put flesh on its bones.'") (quoting McPherson v. Kelsey, 125 F.3d 989, 996 (6th Cir. 1997)). Accordingly, this argument is deemed waived also because of the perfunctory manner in which it was raised. See Nortek Global, 736 F. App'x at 583 ("[T]his court has consistently declined to review issues 'adverted to in a perfunctory manner, unaccompanied by some effort at

developed argumentation[.]'") (quoting <u>McPherson</u>, 125 F.3d at 995).

### III.  CONCLUSION

For the foregoing reasons, the Commissioner's decision is AFFIRMED.

IT IS SO ORDERED.

s/ Tu M. Pham
TU M. PHAM
United States Magistrate Judge

March 20, 2020
Date
